## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 11-21204-CIV-ALTONAGA/Simonton

**CABANA ON COLLINS, LLC**,

    Plaintiff,

vs.

**REGIONS BANK**,

    Defendant.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court on Plaintiff, Cabana on Collins, LLC's ("Plaintiff['s]") Motion for Partial Summary Judgment ("Motion") [ECF No. 68], filed on January 9, 2012. On January 31, 2012, Defendant, Regions Bank ("Regions"), filed a Memorandum in Opposition . . . ("Response") [ECF No. 71]. On February 14, 2012, Plaintiff filed its Reply . . . ("Reply") [ECF No. 88]. The Court heard oral arguments on the Motion on February 22, 2012 and has carefully considered the parties' written submissions, the record, and applicable law.

### I.    BACKGROUND

This case involves a dispute over interest that accrued on monies deposited by Plaintiff in Regions Bank. Plaintiff was the developer of a hotel conversion condominium project — the Cabana Condominium — located in Miami Beach, Florida. (*See* Pl.'s Statement of Undisputed Material Facts[1] ("PSMF") ¶ 1).

On September 30, 2004, Plaintiff and Regions entered into a Loan Agreement pursuant to which Regions was to supply funding for construction of the Cabana Condominium. (*See* Loan

---

[1] Plaintiff's Statement of Material Facts is contained within the Motion. (*See* Mot. 4–12).

Agreement, Ex. 1 [ECF No. 92-1]; PSMF ¶ 2).  Around the same time period, Plaintiff was in the process of pre-selling individual condominium units to buyers using a form Purchase and Sale Agreement ("Purchase Agreement").  (*See* Ex. 2 [ECF No. 92-2]).

Pursuant to Florida Statute section 718.202, Plaintiff was obligated to open an escrow account through an escrow agent who would deposit (or cause to be deposited) into the escrow account the purchase deposits posted by potential buyers of units at the Cabana Condominium. (*See* PSMF ¶ 3); FLA. STAT. § 718.202.  The Purchase Agreement designates the escrow agent as Phillips, Eisinger & Brown, P.A. ("Phillips, Eisinger" or "Escrow Agent").  (*See* Purchase Agreement ¶ 3).  In addition, the Purchase Agreement provides that Plaintiff is entitled to "any interest actually earned" on the escrowed deposits unless Plaintiff defaults on the Purchase Agreement.  (*See id.*).

Consistent with the Purchase Agreement, the Loan Agreement specifies that Phillips Eisinger will act as escrow agent for unit purchase deposits (hereinafter, "Escrow Funds").  (*See* Loan Agreement § 1.1; Escrow Agent Acknowledgment and Agreement ("Escrow Agreement"), Ex. 3 [ECF No. 92-3]; PSMF ¶ 6).  The Loan Agreement obligates Plaintiff to open the statutorily-required escrow account (hereinafter "Escrow Account") at Regions Bank.  (*See* Loan Agreement § 6.2; PSMF ¶ 7).  Plaintiff, through the Escrow Agent, opened and maintained the statutorily required Escrow Account.  (*See* PSMF ¶ 8).

The Escrow Account was initially opened as an interest bearing money market savings account.  (*See id.* ¶ 9).  The Escrow Account was governed by the Regions Bank Customer Agreement ("Customer Agreement").  (*See* Ex. 5 [ECF No. 92-5]; Transcript of Oral Argument on Pl.'s Motion ("Transcript") 4:13–17).

The Customer Agreement contains the following provision limiting the number of withdrawals Plaintiff may make every month:

> **Account Limitations** . . . You may make an unlimited number of withdrawals in person or withdrawals/transfers at an ATM from a money market deposit account or a savings account; however, under federal regulation you are not permitted to make more than six preauthorized transfers (including telephonic transfers and automatic transfers) each statement period. No more than three of the transfers may be made by draft, check, debit card, or similar order to a third party (to the extent permitted by the account). We will determine the number of third party transfers for your statement period based on the date posted. If these limitations are exceeded on a regular basis, we may close the account and open another account in your name that permits unlimited check writing privileges.

(Customer Agreement § I.7).

The Customer Agreement also contains the following provision limiting the amount of time Plaintiff has to review its monthly account statements and file objections:

> **Review of Statements.** Your statement will be mailed monthly, quarterly or annually, depending on the type of account and the services you have with us. You agree to promptly examine the statement mailed or delivered to you, or held by us at your request, and to notify us of any debits or charges reflected therein that you believe should not have been paid, in whole or in part, and any deposits not credited, in whole or in part. The statement shall be conclusively deemed to be correct unless we are notified by you in writing within thirty days after the closing date of the statement.

(*Id.* § I.9)

These two provisions are at the heart of a dispute that arose when, in October 2005, Regions transferred the Escrow Funds from an interest-bearing account to a non-interest bearing account. (*See* PSMF ¶¶ 30, 40). According to Regions, it did this because Plaintiff had repeatedly violated the monthly withdrawal limitations on the Escrow Account in the earlier months of 2005. (*See* Regions' Statement of Additional Material Facts in Opposition . . . ("DSAF") ¶ 58 [ECF No. 72]). Plaintiff disputes this assertion and contends it never violated the monthly withdrawal limitations placed on the Escrow Account. Despite the parties'

disagreement about the facts, Plaintiff in its Motion and Defendant through its Response both seek summary judgment.

In identifying whether there are any facts in dispute, the Court begins with the only specific timeline and description of events provided by either of the parties, which is contained in Regions' Statement of Additional Material Facts in Opposition.  Regions' Statement asserts the following.

In February 2005, Plaintiff made five withdrawals from the Escrow Account, all of which were by check.  (*See* DSAF ¶ 58).  In March 2005, Plaintiff made eight withdrawals from the Escrow Account, five of which were by check.  (*See id.*).  Then, on April 15, 2005, based on the voluminous withdrawals, Regions sent a letter advising the Escrow Agent as follows:

> Federal banking regulations define your Commercial Money Market Savings account, number 6447137095, as a limited transaction account.  This means that you may make no more than six withdrawals from your account during each month, unless the withdrawals are made by you in person or at an ATM.  No more than three of the six limited withdrawals may be made by check or draft.  If you exceed the withdrawal limit on more than an occasional basis, the bank is required by law to transfer your funds to a different account type.
>
> Our records show that last month you exceeded the withdrawal limit for the second consecutive month. If this is a rare occurrence for you, this is not a cause for concern. However, if you consistently need to make more than six withdrawals, or write more than three checks, from your account, Commercial Money Market Savings may not be the right account for you. If this is the case, we recommend that you talk with a customer service representative at your local bank about other account options.

(Warning Letter, Ex. 9 [ECF No. 73-15]; *see* DSAF ¶ 59).

Notwithstanding the letter, in May 2005, Plaintiff made at least seven withdrawals from the Escrow Account and issued six checks.  (*See* DSAF ¶ 60).  In June 2005, Plaintiff made at least eleven withdrawals from the Escrow Account and issued eight checks.  (*See id.*).  Because

of the recurring frequent withdrawals, Regions placed the following warning on the monthly statement sent to Plaintiff in June:

> Banking regulations limit withdrawals on this account to six per month; no more than three may be checks. Accounts that continue to have more than six withdrawals per month will be transferred to another account type.

(Escrow Account Monthly Statements 46, Ex. N [ECF No. 73-14); *see* DSAF ¶ 61).

Then, in July 2005, Plaintiff made at least six withdrawals from the Escrow Account, five of which were by check.  (*See* DSAF ¶ 62).  In August 2005, Plaintiff made at least seven withdrawals from the Escrow Account, six of which were by check.  (*See id.* ¶ 63).  Based upon what Regions considered to be repeated violations of the Customer Agreement's withdrawal limitations, in October 2005, Regions transferred the Escrow Funds from an interest bearing money market account to a non-interest bearing commercial checking account, and ceased paying interest to Plaintiff.  (*See id.* ¶ 64).

The extent to which Plaintiff disputes the foregoing timeline and description of events and communications is ambiguous.  In its Response to Defendant's Statement of Additional Material Facts, Plaintiff issues a blanket denial to each of the foregoing assertions.  (*See* Pl.'s Resp. to DSAF . . . ¶¶ 58–67 [ECF No. 89]).  And yet, Plaintiff's other filings reveal that it does not actually dispute everything described above.  (*Compare, e.g.*, Pl.'s Resp. to DSAF ¶ 59 (disputing that the Warning Letter was sent) *with* PSMF ¶ 23 (acknowledging that the Warning Letter was sent)).

For example, Plaintiff's Motion acknowledges that Plaintiff made at least *some* withdrawals and wrote *some* checks from the period of February 2005 to April 2007, but it avoids discussing specific numbers.[2]  (*See* PSMF ¶¶ 13, 22).  Plaintiff further asserts that all

---

[2] Plaintiff filed copies of the monthly statements from the Escrow Account, which were accompanied by copies of the checks Plaintiff wrote during each monthly period.  (*See* Escrow Account Monthly

transactions involving the Escrow Account were made with the knowledge, consent, and approval of Regions (*see id.* ¶ 22), an assertion which Regions otherwise contests (*see* Def.'s Statement of Material Facts in Opposition . . . ("DSFO") ¶ 22 [ECF No. 72]).  Plaintiff also acknowledges that it received the April 2005 Warning Letter (*see* PSMF ¶ 23), although it maintains that soon thereafter the Escrow Agent contacted Regions' representatives in the local branch office in charge of the Escrow Account and objected to Regions' claim that Plaintiff had exceeded the withdrawal limitations placed on the account (*see id.* ¶ 24). [3]

Plaintiff further acknowledges receiving the October 2005 Statement, which noted the conversion of the Escrow Funds to a non-interest bearing account (*see id.* ¶ 31), although it maintains that soon thereafter the Escrow Agent contacted Regions regarding the conversion of the account and demanded it be restored to an interest bearing account (*see id.* ¶ 36).[4]  Plaintiff also asserts that, upon receiving each subsequent bank statement between October 2005 and July 2007, the Escrow Agent notified Regions Bank by telephone and in writing demanding that the account be restored to an interest bearing account.[5]  (*See id.* ¶ 39).

Based on what Regions believed to be violations of the Customer Agreement's withdrawal limitations, Regions did not pay Plaintiff interest on the Escrow Funds from October 2005 until April 2007.  (*See id.* ¶ 40).  In April 2007, Regions decided to re-convert the Escrow

---

Statements Filed By Plaintiff ("Monthly Statements Filed By Plaintiff"), Ex. 8 [ECF No. 92-8]).  The same exhibit was filed earlier by Regions as part of its Response, and tends to support Regions' timeline of events.  (*See* Escrow Account Monthly Statements Filed By Regions ("Monthly Statements Filed By Regions"), Ex. N [ECF No. 73-14).

[3] Regions does not dispute that the alleged contact was made, but it asserts that the objection was not filed in writing, as required by the Customer Agreement.  (*See* DSFO ¶ 24).

[4] Regions does not dispute that the alleged contact was made, but it asserts that the objection was not filed in writing, as required by the Customer Agreement.  (*See id.* ¶ 36).

[5] Regions states it lacks evidence to either admit or dispute that these communications were made, but it asserts that the objection was not filed in writing, as required by the Customer Agreement.  (*See id.* ¶ 39).

Account to interest bearing status and credited Plaintiff with interest for the months of January, February and March of 2007.  (*See id.*; DSAF ¶ 69).  Regions claims this was done solely as a business courtesy, and for that reason, it refused to pay Plaintiff for interest for the months between October 2005 and December 2006.  (*See* DSAF ¶ 69).  Plaintiff argues, however, that Regions' payment of interest for the months of January, February, and March was simply part of its contractual obligation.  (*See* Pl.'s Resp. DSAF ¶ 69).

Regions continued paying interest on the Escrow Funds until July 2010.  (*See* PSMF ¶ 41).  In July, Regions ceased paying interest by once again converting the Escrow Account to a non-interest-bearing account.  (*See id.* ¶ 41).  Plaintiff contends the Escrow Agent immediately notified Regions and demanded that the account be restored to an interest-bearing account, but to date, Regions Bank has refused all requests. (*See id.* ¶ 42).  Regions disputes this, arguing that the reason the account has not earned interest from July 2010 to the present is because the Escrow Agent asked Regions to place the Escrow Funds in an account with no service charges. (*See* DSFO ¶ 41).  Regions explains that the account with the lowest service charges is non-interest bearing.  (*See id.*)

Plaintiff filed suit against Regions on March 18, 2011.  (*See* Compl. [ECF No. 1-1]).  In the Complaint, Plaintiff states that from 2007 to the present, Regions "retained and converted for its own use and benefit, interest payments on funds deposited by Plaintiff, and the benefits of such interest." (*Id.* ¶ 8).  On June 20, 2011, Plaintiff filed an Amended Complaint alleging five claims: Count I for breach of contract, Count II for breach of fiduciary duty, Count III for unjust enrichment, Count IV for conversion, and Count V for civil theft.  (*See* Am. Compl. [ECF No. 34]).  On September 16, 2011, Regions sought summary judgment on all counts.  (*See* Regions' Motion for Summary Judgment [ECF No. 37]).  On November 7, 2011, the Court granted

Regions' motion for summary judgment as to Counts III–V, but denied it as to Counts I and II. (*See* Nov. 7 Order [ECF No. 53]).

On January 9, 2012, Plaintiff filed the present Motion seeking summary judgment on Counts I and II for breach of contract and for breach of fiduciary duty, respectively. In its Response, Regions requests that the Court enter summary judgment in its favor as to Counts I and II pursuant to Federal Rule of Civil Procedure 56(f)(1). On February 16, 2012, the Court issued an Order [ECF No. 91], advising the parties it was taking Regions' Rule 56(f)(1) request under consideration, thereby providing Plaintiff with the requisite notice and time to respond. (*See* Feb. 16 Order [ECF No. 91]).

## II.   LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Under Federal Rule of Civil Procedure 56(f)(1), the Court may grant

summary judgment for the non-moving party "[a]fter giving notice and a reasonable time to respond."

### III.   ANALYSIS

Plaintiff's Motion requests summary judgment on the two remaining claims.  First, Plaintiff asserts it is entitled to summary judgment on its breach of contract claim, arguing that Regions was contractually obligated to pay Plaintiff interest on the Escrow Funds, and that Regions breached its contractual obligation when it transferred the Escrow Funds from an interest bearing account to a non-interest bearing account.  Second, Plaintiff seeks summary judgment on the breach of fiduciary duty claim, arguing that no material issues of fact preclude a finding that Regions owed Plaintiff a fiduciary duty, which Regions violated when it transferred the Escrow Funds to a non-interest bearing account.

### A.   BREACH OF CONTRACT

The resolution of Plaintiff's contract claim, as set forth in its Motion and previous filings, initially turned upon the resolution of a critical disputed issue of fact: whether the Customer Agreement governed the Escrow Account.  Plaintiff's original theory of the case was that the Customer Agreement — and the account withdrawal limitations contained therein — did not apply, and that therefore the only agreements relevant to Plaintiff's breach of contract claim were the Escrow Agreement between the two parties, and the Purchase Agreement between Plaintiff and the unit buyers.  (*See* Mot. 13–14).

At oral argument, however, Plaintiff jettisoned this theory in its entirety when it conceded that the Customer Agreement governs the Escrow Account.  (*See* Transcript 4:13–17).  In a change of position, Plaintiff now argues that while the Customer Agreement governs the Escrow Account, Plaintiff never breached the Customer Agreement's withdrawal limitations.  (*See id.*

4:24–8:6).  Therefore, Regions had an ongoing obligation to pay interest on the Escrow Funds, which it breached when it transferred those funds to a non-interest bearing account.  (*See id.* 8:21–9:7).  Plaintiff further argues that the Escrow Agent timely objected to the transfer of the Escrow Funds to a non-interest bearing account, as required by the Customer Agreement.[6]  (*See id.* 9:11–18; Mot. 16–17).  Plaintiff also argues that there are no disputed issues of material fact underlying any of its assertions, and the Court therefore should conclude as a matter of law that: (1) Plaintiff did not breach the Customer Agreement's withdrawal limitations; (2) Regions breached the Customer Agreement when it transferred the Escrow Funds to a non-interest bearing account; and (3) Plaintiff properly objected to the improper transfer of funds.

Regions disagrees, asserting the undisputed facts reveal that it was Plaintiff, and not Regions, that breached the Customer Agreement.  (*See* Resp. 6).  In support of its position, Regions points to copies of Plaintiff's monthly bank statements and copies of checks it wrote during those months that demonstrate Plaintiff violated the withdrawal limitations on the Escrow Account.  (*See id.* (citing Monthly Statements filed by Regions)).  Regions then states that given Plaintiff's breach, Regions' decision to transfer the Escrow Funds to a non-interest bearing account was its express contractual right to do.  (*See* Resp. 6).  Regions further adds that Plaintiff cannot complain since Plaintiff failed to satisfy the express condition precedent set forth by the Customer Agreement, which required Plaintiff to timely notify Regions of any objections it may have in writing.  (*See id.* 7).  Regions asserts no disputed material facts remain, as the law clearly supports its decision to stop paying interest on the Escrow Funds. The Court agrees with Regions.

---

[6] The relevant language of the Customer Agreement provides that "[t]he statement shall be conclusively be deemed to be correct unless we are notified by you in writing within (30) days after the closing date of the statement."  (Customer Agreement § I.9)

The relevant provision of the Customer Agreement, which governs Plaintiff's breach of contract claim, reads as follows:

> No more than three of the transfers may be made by draft, check, debit card, or similar order to a third party (to the extent permitted by the account) . . . If these limitations are exceeded on a regular basis, we may close the account and open another account in your name that permits unlimited check writing privileges.

(Customer Agreement § I.9). The plain language of the contract restricts Plaintiff to three third-party checks per month. (*See id.*). It further advises that, in the event these limitations are regularly violated, Regions' contractual right is to transfer those funds to a different type of account through which Plaintiff may write an unlimited number of checks. (*See id.*).

The undisputed facts reveal that Plaintiff violated the withdrawal limitations placed on the account by the Customer Agreement. The copies of Plaintiff's monthly Escrow Account statements and the checks it wrote during those months, which were filed by Regions as part of its Response and by Plaintiff as part of its Exhibits for Summary Judgment [ECF No. 92], establish that in 2005 Plaintiff wrote more than three third-party checks per month on a regular basis. (*See* Monthly Statements Filed By Regions; Monthly Statements Filed By Plaintiff). Specifically, they reveal that Plaintiff wrote *four* third-party checks during the months of February (*see* Monthly Statements Filed By Plaintiff 3, 6, 8, 10); May (*see id.* 34, 36, 38, 42); June (*see id.* 47, 49, 55, 61); and July (*see id.* 66, 70, 72, 74). In so doing, Plaintiff violated the withdrawal limitations of the Customer Agreement, and its refusal to acknowledge these transactions does not create a triable issue. *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that a party must "do more than simply show that there is some metaphysical doubt as to the material facts"); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("[U]nsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a *genuine*

issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)); *see also* Advisory Committee Note to 1963 Amendment of FED. R. CIV. P. 56(e) (noting that the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial").   Once Regions provided sufficient facts to support the grant of summary judgment in its favor with the records of excessive monthly withdrawals, the burden shifted to Plaintiff to come forward with specific facts to defeat the requested summary judgment against it.  *See Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. This, Plaintiff failed to do.

The undisputed facts similarly reveal that Regions' decision to transfer the Escrow Funds to a non-interest-bearing commercial checking account in October 2005 was its contractual right. The Customer Agreement provides that if Plaintiff violates the Customer Agreement's withdrawal limitations, then Regions has the right to transfer the Escrow Funds to an account "that permits unlimited check writing privileges." (Customer Agreement § I.7).   This is exactly what Regions did, based upon its interpretation of the applicable federal regulations, *Regulation D*, 12 C.F.R. section 204 *et seq.*, which place limits on the number of permissible monthly withdrawals that can be made from interest-bearing money market accounts.[7]  (*See* Resp. 6). Although Regions' interpretation of the applicable regulations appears to be correct, the Court need not decide the issue as a matter or law.  The broad language in the contract does not limit

---

[7] Specifically, the FEDERAL RESERVE CONSUMER COMPLIANCE HANDBOOK, *Regulations Q & and D: Interest on Demand Deposits/Reserve Requirements*, classifies interest bearing money market savings accounts as "Savings Deposit Account[s]," limits those accounts to three third-party checks per month, and states that upon violation of those limitations, the bank "may be required to reclassify the account as a demand account."  3–4 (January 2006).  The HANDBOOK further explains that demand accounts "[m]ay not be interest bearing," and that "[d]emand deposits include deposits that for some reason have been reclassified as demand deposits — for example . . . savings deposits for which the transfer or withdrawal limitations have been exceeded."  *Id.* at 2.

Regions to the strict requirements of the federal regulations in question, but rather, provides Regions with the authority to transfer the funds to *an* account "with unlimited check writing privileges" — what was, at Regions Bank, a non-interest bearing commercial checking account. (Customer Agreement § I.7).  The Court will not read a requirement into this provision that will serve to alter the contract's express terms.  *See, e.g.*, *Churchill Dev., Inc. v. Prime Outdoor Group, LLC*, 816 So. 2d 764, 766 (Fla. 2d DCA 2002) ("The express terms of the addendum provide Liu the right to unilaterally cancel the agreement for any reason. . . .  To read such requirements into this provision alters the express terms of the addendum."); *Fernandez v. Homestar at Miller Cove, Inc.*, 935 So. 2d 547, 551 (Fla. 3d DCA 2006) (noting that "a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties" (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995)); *Beach Resort Hotel Corp. v. Wieder*, 79 So. 2d 659, 663 (Fla. 1955) ("It is well settled that courts may not rewrite a contract . . . in order to relieve one of the parties from the apparent hardship of an improvident bargain.").

This said, the Court cannot resolve the separate question of whether Regions' decision to transfer the Escrow Funds to a non-interest bearing account a second time, beginning in July 2010, was legally justified.  Although Regions asserts that it transferred Plaintiff's funds to a non-interest bearing account that year based upon the Escrow Agent's request "that the account type be changed to an account that incurs no service charges" (DSAF ¶ 83) — what is, at Regions, a non-interest bearing account  (*see id.*) — Plaintiff disputes this fact (*see* Pl.'s Resp. DSAF  ¶ 83).  The parties have not supplied sufficient information to resolve that dispute as a matter of law.  Therefore, the Court denies summary judgment for both parties as it relates to

13

Plaintiff's breach of contract claim arising from Regions' decision to transfer the Escrow Funds to a non-interest bearing account in July 2010.

In sum, because the undisputed facts establish that Plaintiff clearly violated the withdrawal limitations of the Customer Agreement in 2005, and that Regions' decision to transfer the Escrow Funds to a non-interest bearing account that same year was its legal right under the Customer Agreement, the Court grants summary judgment for Regions, the non-movant, on this portion of the breach of contract claim.[8]   However, because disputed issues of material fact remain as to Regions' decision to transfer Plaintiff's funds to a non-interest bearing account in July 2010, the Court denies summary judgment for both parties on Plaintiff's breach of contract claim as it pertains to Regions' conduct for the period of time between July 2010 and the present.

## B.   BREACH OF FIDUCIARY DUTY

Plaintiff also seeks summary judgment on its breach of fiduciary duty claim.  To prevail under a theory of fiduciary liability, a plaintiff must allege "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages."  *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted).  Under Florida law, courts have consistently held that the relationship of a bank to a borrower is that of creditor to debtor, and

---

[8] While disputed issues of fact remain as to whether Plaintiff properly objected to Regions' decision to transfer the Escrow Funds to a non-interest bearing account in writing, as required by the Customer Agreement, those issues are not material to resolution of Plaintiff's breach of contract claim because the Court has found that Regions did not violate the Customer Agreement in the first occasion it transferred the funds.  Whether Plaintiff properly complied with the Customer Agreement's notice provision is an affirmative defense raised by Regions, and not a cause of action.  *See Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010) ("An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist.").  As such it is not an impediment for summary judgment in favor of the Defendant.  *See, e.g., Caffey v. Limestone Cnty., Al.*, 243 F. App'x 505, 508 (11th Cir. 2007) (in affirming summary judgment "[a]lthough each defendant raised various defenses . . . to Caffey's claims, we need not address those defenses here because we conclude that Caffey has failed to present evidence of a violation of her Eighth Amendment rights.").

that as a general matter, a bank owes no fiduciary responsibilities.  *See First Nat'l Bank & Trust Co. of Treasurer Coast v. Pack*, 789 So. 2d 411, 414 (Fla. 4th DCA 2001); *BCJJ, LLC v. LeFevre*, No. 8:09-CV-551-T-17EAJ, 2011 WL 989230, at *7 (M.D. Fla. Mar. 21, 2011).

Notwithstanding the general rule regarding the relationship between a bank and its customer, Florida courts have held that "special circumstances" may impose a fiduciary duty on a bank.  *Pack*, 789 So. 2d at 415; *see also Bldg. Educ. Corp. v. Ocean Bank*, 982 So. 2d 37, 40–41 (Fla. 3d DCA 2008); *Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc*., 842 So. 2d 204, 208 (Fla. 3d DCA 2003).  For example, "where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control," a fiduciary relationship may arise.  *Pack*, 789 So. 2d at 415 (quoting *Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 519 (Fla. 3d DCA 1994)); *see also Bldg. Educ. Corp.*, 982 So. 2d at 41 ("A fiduciary relationship may arise, however, under special circumstances where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him.") (internal quotation marks and citation omitted).

Plaintiff asserts such "special circumstances" exist here for two reasons.  First, Plaintiff argues that following the execution of the Loan Agreement, Regions' officers made various representations and commitments that created a fiduciary relationship.  (*See* Mot. 23; Am. Compl. ¶¶ 40–45).  Plaintiff further argues that there is an additional basis upon which to find a fiduciary relationship existed between the parties: "By requiring that the Escrow Account be opened with Regions Bank . . . [Regions] received a 'greater economic benefit than from a typical transaction.'"  (Mot. 23 (quoting *Pack*, 789 So. 2d at 415)).  Based upon the existence of

a fiduciary relationship, then, Plaintiff argues that Regions breached its fiduciary duty when it transferred the Escrow Funds to a non-interest bearing account.  (*See id.* 23–27).

In its Response, Regions argues that it did not, indeed could not, have owed Plaintiff a fiduciary duty because the parties expressly precluded the creation of a fiduciary relationship through their various agreements.  (*See* Resp. 12–13).  Regions first notes that "at the outset of their relationship, the parties executed a Loan Agreement that specifically provided that the sole legal relationship between the parties would be that of debtor and creditor, and not a partnership or joint venture, much less a fiduciary relationship." (*Id.* 12).  Regions further argues that Plaintiff's reliance upon Regions' representatives' alleged oral representations is misplaced because the parties entered into a Consolidated Promissory Note through which "Cabana also agreed to waive reliance upon any subsequent oral statements of the Bank." (*Id.*).  Finally, Regions argues that "Cabana subsequently reaffirmed these agreements upon executing each of the loan extension agreements in late 2007 and 2008." (*Id.* 13).

Plaintiff disagrees that these agreements preclude the possibility of a fiduciary relationship from arising, and in so doing, identifies a variety of disputed issues of fact that relate to Plaintiff's breach of fiduciary duty claim.  Specifically, Plaintiff disputes the manner in which the express waiver in the Loan Agreement and Promissory Note was intended to relate to the Escrow Account (*see* Pl.'s Resp. DSAF ¶ 75), the manner in which the extension agreement was intended to relate to the Escrow Account (*see* Pl.'s Resp. DSAF ¶¶ 73–74), and the nature of the circumstances surrounding Regions' representatives' assertions (*see* Pl.'s Resp. DSAF ¶ 70). The foregoing factual disputes constrain the Court from resolving the underlying question of whether the parties entered into a fiduciary relationship.

However, because the Court has already found that, as a matter of law, Regions' decision to transfer the Escrow Funds to a non-interest bearing account in 2005 was expressly permitted by the parties' contract, that part of Plaintiff's fiduciary claim is now barred by Florida's economic loss rule.

Florida's economic loss rule "provides that 'parties to a contract can only seek tort damages if conduct occurs that establishes a tort distinguishable from or independent of [the] breach of contract." *Royal Surplus Ins. Co. v. Coachman Indus., Inc.*, 184 F. App'x 894, 902 (11th Cir. 2006) (quoting *Jones v. Childers*, 18 F.3d 899, 904 (11th Cir. 1994)). "Th[e] rule is based upon the doctrine that 'contractual principles are more appropriate than tort principles for resolving economic loss claims.'" *Id.* (quoting *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899, 901 (Fla. 1987)). The economic loss rule therefore restrains "[a] party to a contract" from "seeking to obtain a better bargain than originally made," by circumventing the legal rights and obligations provided for in a contract by bringing a tort claim. *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536–37 (Fla. 2004); *see also Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim. In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous.") (footnote call number and citation omitted); *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, 03 Civ. 7936 (DAB), 2006 WL 1379596, at *6–7 (S.D.N.Y. May 18, 2006) (finding that breach of fiduciary claim cannot exist independently from a breach of contract claim where both claims are based on the same operative facts because of the primacy of contract law).

As relevant to Plaintiff's breach of fiduciary duty claim, the economic loss rule applies "where the parties are in contractual privity and one seeks to recover damages in tort for matters arising from the contract." *Indem. Ins. Co.*, 891 So. 2d at 532. In other words, "[w]here the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action." *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1349 n.4 (S.D. Fla. 2005) (quoting *Eye Care Int'l Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1315 (M.D. Fla. 2000)).

The economic loss rule bars Plaintiff's breach of fiduciary duty claim as it pertains to Regions' 2005 decision because the claim arises from the same information that underlies the breach of contract claim. *See Royal Surplus Ins. Co.*, 184 F. App'x at 900–02 (holding that where the trial court properly granted summary judgment on breach of contract claim, plaintiff's breach of fiduciary duty claim, based on "the same information that provided the basis for the breach of contract claim," was barred by the economic loss rule); *see N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 6:07-cv-1503-Orl-19KRS, 2008 WL 341309, at *4 (M.D. Fla. Feb. 5, 2008) ("[T]he [economic loss] rule . . . appl[ies] when the claim for breach of fiduciary duty is based upon and inextricably intertwined with the claim for breach of contract."). Here, the very action that constitutes the basis for Plaintiff's breach of contract claim — Regions' decision to transfer the Escrow Funds to a non-interest bearing account in 2005 — also constitutes the basis for a portion of Plaintiff's breach of fiduciary duty claim. Indeed, the Amended Complaint makes this point explicit (*see* Am. Compl. ¶¶ 66, 70), while it similarly reveals that the damages Plaintiff seeks for both of its claims are one and the same (*see id.* ¶¶ 67, 72). *See Granat v. Axa Equitable Life Ins*. Co., 06-21197-CIV, 2006 WL 3826785, at *5 (S.D.

Fla. Dec. 27, 2006) (applying the economic loss rule to a breach of fiduciary duty claim where: (1) "Plaintiffs alleged the same injury [in their claim for breach of fiduciary duty] . . . as they alleged in their claim for breach of contract"; and where (2) "the damages that Plaintiffs request for the alleged breach of fiduciary duty are the same damages that they requested in their breach of contract claim").

Both the withdrawal limitations on the account and the available remedy of transferring the Escrow Funds in the event that limitation was violated are provisions otherwise part of "the deal" contracted to between the parties. The Court has already found that Regions upheld its end of the bargain insofar as its 2005 decision to transfer Plaintiff's funds is concerned. This portion of Plaintiff's breach of fiduciary duty claim therefore seeks to avoid the legal effect of the contract, impermissibly providing the Plaintiff with "a better bargain than originally made." *Indem. Ins. Co.*, 891 So. 2d at 536.

Therefore, the Court grants summary judgment on Plaintiff's breach of fiduciary duty claim in favor of Regions as it relates to the damages arising out of Regions' decision to transfer the Escrow Funds to a non-interest bearing account in 2005. To the extent that Plaintiff's breach of fiduciary duty claim arises from Regions' decision to transfer the Escrow Funds to a non-interest bearing account in 2010, however, the Court denies summary judgment as to both parties.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDER AND ADJUDGED** as follows:

1. The Motion **[ECF No. 68]** is **DENIED**.

2. The Response **[ECF No. 71]**, which the Court construes as a Cross-Motion for

Case No. 11-21204-CIV-ALTONAGA/Simonton

Summary Judgment, is **GRANTED** in part and **DENIED** in part.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of March, 2012.

CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE

cc: counsel of record